**Debevoise
&Plimpton**

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

February 7, 2024

**BY ECF**

Hon. Ona T. Wang, U.S. District Court, S.D.N.Y.
500 Pearl Street, New York, New York 10007

Re:    ***SS&C Technologies Holdings, Inc. and Advent Software Inc. v. Arcesium LLC***,
No. 1:22-cv-02009-TMR-OTW

Dear Judge Wang:

Pursuant to the Court's directives at the December 5, 2023 conference (Tr. 39:5-41:6) and subsequent Orders (Dkt. Nos. 234, 236), Arcesium LLC ("Arcesium") respectfully submits this letter to (i) identify the issues that are ripe for Arcesium's partial summary judgment motion, (ii) request that the Court direct SS&C Technologies Holdings, Inc. and Advent Software Inc. (collectively "SS&C") to revise their January 12, 2024 trade secret disclosure (the "Disclosure") to delete all alleged trade secret claims based on SEED, GEAR, and Munshi (the "DESCO Technologies"), and (iii) advise the Court that no further discovery is necessary in advance of Arcesium's partial summary judgment motion.

SS&C's trade secret claims are ripe for summary judgment because undisputed facts confirm that (a) the alleged trade secrets are unprotectable, industry-standard terms, methods, and functionalities, (b) SS&C failed to maintain secrecy over the alleged trade secrets, and (c) for some alleged trade secrets, SS&C has not identified them with the legally required level of specificity. No additional discovery is needed on these points. Arcesium requests only that SS&C revise the Disclosure to delete any reliance on the DESCO Technologies because they were not put at issue in the operative complaint filed by SS&C on May 20, 2022 (the "Complaint"). The revised Disclosure will provide a clear record for Arcesium's partial summary judgment motion.

**Background**

SS&C commenced this litigation in March 2022 alleging that Arcesium misappropriated trade secrets from SS&C's Geneva portfolio accounting software in connection with Arcesium's development of Trinity, the portfolio accounting software it launched in 2020, and its related Nautilus technology. From the very first court conference and throughout the litigation, Arcesium argued that the Complaint's trade secret allegations were unacceptably vague, and that SS&C tactically alleged "theft of trade secrets with vagueness" so that it could "take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014).

Eighteen months of extensive discovery ensued, during which SS&C demanded the production of hundreds of thousands of pages of documents, a live version of Arcesium's portfolio accounting software, and 21 depositions (nine of which SS&C took before discovery was stayed). Then, on October 18, 2023, with just weeks to go until the scheduled close of fact discovery, SS&C abruptly filed a complaint against D. E. Shaw & Co. L.P. ("DESCO") alleging that DESCO was the "mastermind" of a "decade-long scheme" to steal SS&C's Geneva trade secrets. The complaint against DESCO focused not on Trinity and Nautilus but instead on the DESCO Technologies: SEED, GEAR, and Munshi. Ex. 1, 23 Civ. 9158, Dkt. No. 1.

Shortly thereafter, on November 15, 2023, SS&C filed a "consolidation" motion in which it sought to amend the Complaint against Arcesium to fundamentally transform this case from one about accounting software created by Arcesium in 2020, to one about the DESCO Technologies that were created years before Arcesium even existed. On January 5, 2024, the District Court denied SS&C's motion, finding that consolidation at this stage would cause "significant prejudice to defendants." Dkt. No. 239 at 11. Five days later, SS&C filed an amended complaint against DESCO alleging that SS&C's claims about the DESCO Technologies were based on information it "only learned about . . . during discovery in SS&C's trade secret misappropriation case against Arcesium." Ex. 2, 23 Civ. 9158, Dkt. No. 32 ("Am. Compl.") ¶ 85.[1]

On January 12, 2024, SS&C produced the Disclosure (Exhibit 3). Tellingly, it focuses primarily on the DESCO Technologies despite the fact that the Complaint never alleges that Arcesium misappropriated Geneva trade secrets to create them. Indeed, *there is not a single mention of SEED, GEAR, or Munshi in the Complaint*, nor could there be given the undisputed fact that DESCO created the DESCO Technologies before Arcesium even existed. Ex. 2, Am. Compl. ¶¶ 1, 64, 67. Simply put, the Disclosure is the culmination of SS&C's stratagem of maintaining trade secret vagueness for as long as possible in order to conduct a fishing expedition through Arcesium's files. SS&C is now attempting to salvage its trade secret claims by fundamentally altering what this case is about; if permitted to stand, the Disclosure's inclusion of SEED, GEAR, and Munshi would create precisely the prejudice Arcesium has long warned about. *See, e.g.*, Dkt. No. 237, Dec. 5, 2023 Tr. 16:15-16 (noting Arcesium has been raising "concerns about trade secret specificity . . . all along"); *id.* at 41:19-22 ("I have been hearing repeatedly this concern on Arcesium's part about trade secret specificity. And in managing discovery, I am starting to understand that more . . . .").

## I.    Arcesium Has a Ripe Motion for Partial Summary Judgment That Is Likely to Resolve This Litigation.

Based on the Complaint, the Disclosure, the discovery completed to date, and publicly available information, Arcesium respectfully requests permission to file a partial summary judgment motion as to SS&C's trade secret claims.[2] *See* Dkt. No. 237, Dec. 5, 2023 Tr. 39:23-25 ("[W]e might be in a position for a limited motion for summary judgment on the trade secret issue.").[3] The motion will address threshold issues that are ripe for determination as a matter of

---

[1] SS&C's use of Arcesium's discovery material to amend the DESCO complaint is a violation of the protective order in this case and will be addressed in a separate motion to be filed on February 13, 2024.

[2] This request is made without prejudice to any future summary judgment motion by Arcesium if the proposed motion does not fully resolve the litigation. If Arcesium's request is granted, Arcesium expects the parties would submit a joint, proposed briefing schedule.

[3] If the Court is amenable to considering an additional issue in this partial summary judgment motion, Arcesium respectfully requests permission to also move as to Arcesium's breach of contract counterclaim. That counterclaim is ripe for summary judgment because SS&C indisputably failed to provide Arcesium the contractually required notice and opportunity to cure. Under the Hosted Reseller Agreement ("HRA"), if SS&C believed that Arcesium had violated the HRA, SS&C was required to give Arcesium notice of the breach and thirty days in which to cure it. Ex. 18, at 655447, § 10.3. It is undisputed that SS&C failed to provide notice or the opportunity to cure. SS&C's only defense – that the notice-and-cure provision did not survive the HRA's expiration – can be resolved as a matter of law.

law based on indisputable facts, and their determination is likely to completely resolve this case without additional discovery, or at least dramatically narrow it.  This litigation is nearly two years old, has cost the parties tens of millions of dollars, has substantially burdened Arcesium's business, and has required meaningful Court supervision and intervention.  Resolution of these core issues will conserve the parties' and the Court's resources.  *See Negrete v. Citibank*, 2016 WL 67788, at *2 (S.D.N.Y. Jan. 5, 2016) (permitting summary judgment motion to be filed before completion of discovery and concluding that if the motion succeeded, "the topics at issue in the case would be narrowed and the burdens of discovery concomitantly lessened"); *Petito v. Puritan's Pride, Inc.*, 35 F. Supp. 3d 494, 502, 513 (S.D.N.Y. 2014) (early summary judgment motion granted); *G5 Techs., Inc. v. Int'l Bus. Machines Corp.*, 2005 WL 2271741, at *9, 14 (S.D.N.Y. Sept. 19, 2005) (same).  Arcesium anticipates moving for partial summary judgment as to each of SS&C's alleged trade secrets for one or more of the following reasons.

***The Alleged Trade Secrets Are Unprotectable Because They Are Industry-Standard Terms, Methods, and Functionalities.***  Many of SS&C's alleged trade secrets consist of unprotectable, industry-standard terms, methods, and functionalities.  For example, the Disclosure identifies numerous basic field names as "secret," including ██████████████ ████████████████████████████████████████████ which are well-established accounting concepts that SS&C did not create.  *See, e.g.*, Ex. 4, *2006 ISDA Definitions* at 11, § 4.16(c) (calculating the day count as "number of days accrued/number of days in year"); Ex. 5, *The Handbook of Fixed Income Securities* at 117-19 (discussing the difference between "modified duration" and other forms of duration); Ex. 6, *Dictionary of Finance and Investment Terms* at 6, 187 (defining "Accrued Interest" and "Dividends Payable").  SS&C also asserts that Geneva's inclusion of the "FIFO" tax lot closing methodology is a trade secret, but "First-In-First-Out" is a well-known, legally regulated accounting principle.  *See, e.g.*, Ex. 6, *Dictionary of Finance and Investment Terms* at 256 ("First In, First Out (FIFO) . . . . In accounting for the purchase and sale of securities for tax purposes, FIFO is assumed by the IRS . . . .").  Field names, methods, and functions that are widely known and used in the industry cannot be trade secrets.  *See, e.g.*, *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 270 (S.D.N.Y. 2014) ("[I]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret . . . ." (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984))).  Arcesium's motion will identify the alleged trade secrets that, as a matter of law, cannot be protectable.

***SS&C Failed to Maintain Secrecy Over the Alleged Trade Secrets.***  The Disclosure confirms that SS&C is improperly seeking to assert trade secret protection over information that it failed to keep secret.  For example, it is undisputed that SS&C disclosed Geneva's "FIFO" tax lot closing methodology in publicly-available filings with the U.S. Copyright Office.  Ex. 7, at 754711-12.  *See PaySys International, Inc. v. Atos Se*, 2016 WL 7116132, at *8 (S.D.N.Y. Dec. 5, 2016) ("[D]epositing copies [with the Copyright Office] without redaction [] renders the deposited material publicly accessible and vitiates a trade secret claim.").  There are numerous other instances of SS&C publicly disclosing information it now claims is a trade secret.  *See, e.g.*, Ex. 8 (comparing ████████████████ with Copyright Office disclosure "Accrual Days Per Month"); Ex. 9 (comparing ████████████████ with Copyright Office disclosure "AccrualConvention"); Ex. 10 (comparing ████████████████ with Copyright Office disclosure "price denomination").

3

It is also undisputed that Arcesium did *not* have access to Geneva's source code, and that each alleged trade secret was readily apparent to at least thousands of Geneva users over the past 30 years who, like Arcesium, used the software and had access to the purported trade secrets. "The volume, age and dissemination" of these purported trade secrets confirms they are no longer "secrets" (if they ever were): "How can [software] written thirty years ago and licensed to people all over the world still be trade secret?  It may be valuable, but not every asset of value constitutes a trade secret." *PaySys*, 2016 WL 7116132, at *11.

Discovery has also revealed that SS&C apparently used form contracts for Geneva customers that included confidentiality provisions that have long expired – sometimes just *two years* after the contract terminated – confirming SS&C's internal recognition that Geneva did not include trade secrets and that the purported trade secrets are not subject to any confidentiality limitations.  *See, e.g.*, Ex. 11, at 1199949, § 6.2 & Ex. 12, at 83541; Ex. 13, at 120870, § 6.2; Ex. 14, at 115953, § 9.1.  SS&C also disclosed its alleged trade secrets at industry conferences to prospects and industry professionals who were not customers.  *See, e.g.*, Ex. 15, at 7544752 (███████████████); Ex. 16, at 907786 (comparing Disclosure excerpt with ████████ █████████████████); Ex. 17, at 27431-39 (comparing Disclosure excerpt with conference materials discussing swaps).

Arcesium's motion will identify the alleged trade secrets that SS&C failed to keep secret, rendering them legally unprotectable.  *See, e.g.*, *Big Vision*, 1 F. Supp. 3d at 269 ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." (quoting *Ruckelshaus*, 467 U.S. at 1002)).

***SS&C Fails to Describe Some of Its Alleged Trade Secrets With the Requisite Specificity.***  The Disclosure provides insufficient specificity for some of SS&C's alleged trade secrets.  For example, SS&C appears to assert that its *combination* of non-secret elements constitutes a trade secret, *see* Ex. 3, Disclosure at 2, 10 (claiming as trade secrets the ████████████████████████████████████████████████████████████████), but does not specifically identify any such combinations – let alone explain what is unique, secret, or valuable about them.  Instead, for many of the alleged trade secrets, SS&C merely describes how Geneva works.  Arcesium's motion will identify the alleged trade secrets that SS&C has failed to delineate with the legally required level of specificity.  *See, e.g.*, *Medidata Sol., Inc. v. Veeva Sys., Inc.*, 2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021) ("[I]f the plaintiff's description of the trade secret is so 'vague and ambiguous' that no reasonable juror could possibly determine whether one of the elements of the cause of action is satisfied, a defendant should be granted summary judgment."); *PaySys*, 2016 WL 7116132, at *1 (granting summary judgment where "plaintiff has failed to identify its trade secrets with the requisite specificity").

II.    **SS&C Must Revise the Disclosure to Delete Any References to the DESCO Technologies Because They Are Not – and Cannot Be – Part of This Case.**

The DESCO Technologies are not – and cannot be – part of the case against Arcesium.  The Complaint is utterly silent as to SEED, GEAR, and Munshi and, as SS&C has alleged, "SS&C only learned about . . . D. E. Shaw's use of Geneva trade secrets to develop the Geneva-Derived Applications during discovery in SS&C's trade secret misappropriation case against Arcesium."  Ex. 2, Am. Compl. ¶ 85.  If SS&C "only learned about" the DESCO Technologies

through Arcesium's discovery, they were not and could not have been the basis of SS&C's lawsuit against Arcesium.

It would be highly prejudicial and unfair to permit SS&C, 21 months into the case and near the close of fact discovery, to effectively amend the Complaint and fundamentally transform its claims against Arcesium. SS&C already attempted and failed to inject the DESCO Technologies into this case through its consolidation motion, but the District Court correctly rejected that maneuver. Dkt. No. 239 at 11. If the Disclosure is not modified, SS&C will have accomplished through the backdoor the prejudice the District Court prohibited it from inflicting through the front door, and SS&C will have achieved the goal that, from the very beginning, its vague pleading and fishing expedition-style discovery was meant to facilitate.

SS&C's attempt to import allegations about the DESCO Technologies into this case is particularly galling given that it recently filed a separate complaint against DESCO alleging the DESCO Technologies were created *by DESCO* at least 10 years ago (before Arcesium existed), and that DESCO licensed the Technologies to Arcesium at least 8 years ago. Ex. 2, Am. Compl. ¶¶ 64 & 67. SS&C's own allegations make it obvious that Arcesium could not have created the DESCO Technologies, and that, on their face, SS&C's claims about the DESCO Technologies have been time-barred since at least 2018. *See* 18 U.S.C. § 1836(d) (three-year statute of limitations for federal trade secret misappropriation claims); *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 460-61 (S.D.N.Y. 2020) (same for New York trade secret misappropriation claims). For all of these reasons, the Court should prohibit SS&C from effectively amending the Complaint by using the Disclosure to replace its original trade secret claims about Trinity and Nautilus with new trade secret claims relating to SEED, GEAR, and Munshi.

Additionally, the Court should also prohibit SS&C from making any further modifications to the Disclosure (other than deleting references to the DESCO Technologies). SS&C purports to "reserve the right" to further supplement the Disclosure, describing its alleged trade secrets using "non-limiting examples." Ex. 3, Disclosure at 1-3, 5, 12, 16-17, 37. SS&C has had more than enough time to identify and describe all of its alleged trade secrets with the necessary specificity and should be prohibited from making future attempts to claim additional, as-yet-unidentified trade secrets.

### III. No Further Discovery Is Needed for Arcesium's Summary Judgment Motion.

The issues identified by Arcesium above are ripe for summary judgment without any additional discovery. The parties have conducted 18 months of discovery during which they substantially completed document production (involving hundreds of thousands of pages of documents, live versions of Geneva and Trinity, and live versions of Arcesium's development databases) and took 10 depositions at the cost of tens of millions of dollars. SS&C does not need any further discovery from Arcesium to be able to articulate its alleged trade secrets with specificity. Indeed, "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Jobscience*, 2014 WL 852477, at *5.

The stay of discovery should continue pending resolution of Arcesium's partial summary judgment motion because that motion will fully resolve, or at least significantly narrow, the claims at issue, without the need for the parties to invest additional time and incur additional expense on top of the substantial resources already expended.

Respectfully submitted,


/s/ James J. Pastore
Mark P. Goodman
James J. Pastore
Megan K. Bannigan
Wendy B. Reilly
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mpgoodman@debevoise.com
jjpastore@debevoise.com
mkbannigan@debevoise.com
wbreilly@debevoise.com
bfetzer@debevoise.com

*Attorneys for Arcesium LLC*