**SHEARMAN & STERLING LLP**

599 Lexington Avenue
New York, NY 10022-6069
+1.212.848.4000

stephen.fishbein@shearman.com
212.848.4424

February 28, 2024

**BY ECF—FILED UNDER SEAL**

Hon. Ona T. Wang, 500 Pearl Street, New York, New York 10007

**Re:** *SS&C Tech. Holdings, Inc. and Advent Software Inc. v. Arcesium LLC*, No. 1:22-cv-02009-TMR-OTW – Response to Arcesium's Feb. 7, 2024 Letter

Dear Judge Wang:

SS&C respectfully requests that the Court deny Arcesium's proposed relief and allow the prompt completion of discovery. An indefinite discovery stay while Arcesium pursues partial summary judgment would delay this case for months or longer, without the possibility of resolving it, and would violate settled law that "[s]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). It is also inconsistent with Judge Reif's decision not to consolidate the DESCO case with this one given "the interests in *advancing and concluding* discovery in the *Arcesium* action." ECF No. 239 at 11–12 (emphasis added). Only limited discovery remains, and it can and should be concluded quickly.

Further, SEED, GEAR, and Munshi are properly in this case.[1] They are described in the Amended Complaint and, as the parties *agreed* and this Court *ordered*, they have been the subject of comprehensive discovery. What Arcesium is seeking is an impermissible advance ruling that damning evidence is inadmissible against it. But a defendant cannot, during discovery, unilaterally excise evidence damaging to its defense.

### I.   Limited Discovery Has Already Yielded Significant Evidence Of Arcesium's Theft

SS&C has amassed compelling evidence that Arcesium stole Geneva trade secrets to develop its own accounting capabilities, as reflected in SS&C's 200-plus page Second Supplemental Description of Geneva Trade Secrets ("Supplement," Ex. A) and other evidence. For example, and as further illustrated in the excerpts of evidentiary material included as Exhibits B through J:

- Arcesium copied Geneva's chart of accounts, a tool used to organize a customer's financial information and facilitate granular reporting. Arcesium copied *hundreds* of Geneva financial accounts together with associated attributes and values (which appear in SEED's data model and elsewhere), replicating Geneva's chart of accounts. Ex. A at 25–27 & apps. L–N; Ex. B.

- Arcesium copied *hundreds* of Geneva data attributes that determine how accounting is performed on complex asset classes like bonds, swaps, and credit facilities. Ex. A at 6–8 & app. C. These replicated data attributes appear *thousands* of times throughout Arcesium's platform, including in the data models for SEED and GEAR.

---

[1] With respect to the current setup of Arcesium's platform, GEAR ("Geneva Extraction and Reporting") extracts data from Geneva or Trinity and uses it to generate reports. SEED ("Staging Environment for Enriched Data") optimizes the process for loading data into Geneva or Trinity. Munshi facilitates data transmissions between GEAR and SEED and the portfolio accounting engine being used by an Arcesium client (Geneva or Trinity).

Hon. Ona T. Wang                                                                                          February 28, 2024

- Arcesium used *hundreds* of Geneva Loader Record Formats (which describe in detail the information a Geneva user needs to load data into Geneva), Geneva "binaries" (code that tells Geneva what functions to perform), and Geneva "RSLs" (source code used to run reports from Geneva) to enhance its platform, including to develop Nautilus. Ex. A at 27–34 & apps. O–R; Exs. D–G. Tellingly, some Arcesium RSLs still include SS&C copyright notices and internal notes (*e.g.*, that an RSL is for "internal use only"). Ex. E.

- Arcesium copied *dozens* of Geneva accounting settings, including in the GEAR data model, and tax lot closing methods used to set the accounting rules for a client portfolio (*e.g.*, the order in which to sell shares) (Ex. A at 17–20, 22–25 & apps. H–K; Exs. H–I), and used Geneva pricing sheets to price its own products. Ex. A at 36–37 & app. T; Ex. J.

## II.   Discovery Must Be Completed Before Summary Judgment Briefing

Arcesium does not seriously dispute its theft, instead contending that what it stole are not trade secrets. But early summary judgment on this issue would only delay the case without resolving it and would improperly cut off SS&C's right to complete discovery and pursue its claims.

*First*, summary judgment is premature because discovery is incomplete. *Anderson*, 477 U.S. at 250 n.5; *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (summary judgment improper without "fully adequate opportunity for discovery"). Indeed, the Second Circuit has repeatedly reversed efforts to dispose of cases via early summary judgment in the supposed interests of expediency. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983) (improper for district court to try to resolve "troublesome litigation expeditiously" by staying discovery and hearing early summary judgement); *Berger*, 87 F.3d at 65 (same); *Oakley v. Dolan*, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023) (reversing summary judgment when "additional discovery could have yielded additional [evidence]" for non-movant); *Ass'n of Car Wash Owners Inc. v. N.Y.C.*, 911 F.3d 74, 83–84 (2d Cir. 2018) (same).

Here, additional discovery is needed as Arcesium's entitlement to summary judgment will depend on, among other things: (i) whether all, or only part, of each trade secret is in the public domain, typically the subject of expert testimony, *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2023 WL 3558214, at *4–5 (W.D.N.Y. May 19, 2023) (what was public is "appropriate subject[ ] of expert testimony"); *Roller Bearing Co. v. Multicut N. Am., Inc.*, 2023 WL 7277244, at *20 (D. Conn. Sept. 29, 2023) (conflicting expert testimony as to whether trade secret was public precluded summary judgment); (ii) whether Arcesium's use of each trade secret is limited to the allegedly public aspect of the trade secret, or includes non-public elements, *IME Watchdog, Inc. v. Gelardi*, 2023 WL 6958855, at *8 (E.D.N.Y. Oct. 20, 2023) (use of customer lists went beyond what was public); and (iii) whether Arcesium actually relied on the allegedly public information or instead copied from SS&C, *Franke v. Wiltschek*, 209 F.2d 493, 495 (2d Cir. 1953). In *Franke*, the Second Circuit rejected defendants' claim that public information allowed them to replicate plaintiff's manufacturing methods, holding that "[i]t matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product" because "they did not." *Id.*; *see also IME Watchdog*, 2023 WL 6958855 at *8 (following *Franke*). Remaining discovery, including depositions of key Arcesium technical personnel, an already-agreed 30(b)(6) deposition on Arcesium's technology, and expert discovery, is necessary to develop the factual record on these points.

Hon. Ona T. Wang                                                                                                          February 28, 2024

*Second*, Arcesium's proposed grounds for summary judgment are mired in disputed fact issues that cannot be adjudicated on summary judgment. *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 278 (S.D.N.Y. 2021). In *Town & Country*, plaintiff alleged that the identity of a manufacturing partner was a trade secret; the Court denied summary judgment given the unresolved "dispute of material fact as to both what exactly the asserted trade secret encompasses and whether this trade secret is generally known." *Id*. Here, fact issues include whether Copyright Office filings render certain trade secrets unprotectable, which turns on the scope and circumstances of the filings. *E.g.*, *Compuware Corp. v. Serena Software Int'l, Inc.*, 77 F. Supp. 2d 816, 821 (E.D. Mich. 1999) (software did not lose its trade secret protection when deposited with the Copyright Office); *Warrington Assocs. v. Real-Time Eng'g Sys., Inc.*, 522 F. Supp. 367, 369 (N.D. Ill. 1981) (that a manual was registered with the Copyright Office did not establish it "lost . . . confidentiality").[2] Similarly, selected old Geneva contracts with less sweeping confidentiality provisions cannot as a matter of law resolve whether SS&C employed "reasonable measures" to protect its trade secrets. *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 385 (S.D.N.Y. 2023) ("a plaintiff need only point to evidence of protective measures, and then it becomes the jury's task to evaluate whether they were reasonable").

*Third*, in the rare cases where early summary judgment is permitted, it is employed when resolution can *fully* dispose of a claim.[3] Arcesium's proposed motion could not do that because Arcesium challenges as "public" or "generic" only a fraction of the trade secrets it stole and incorporated into its software platform, leaving entire categories of trade secrets unaddressed (*e.g.*, Geneva chart of accounts attributes and values, Geneva Loader Formats, Geneva binaries, many Geneva RSLs, Geneva pricing, etc.). SS&C also alleges "combination" trade secrets—such as accounting for swaps—that are protectable even if some aspects of them were in the public record.[4] *Integrated Cash Mgmt. Servs. Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990). Further, a review of Arcesium's "evidence" of allegedly "public" information undermines its argument that summary judgment now could resolve whether any of the at-issue secrets were in fact disclosed—for instance, references in conference agendas to "bank debt" and Geneva "exploration" say nothing about what was actually discussed (or the confidentiality obligations undertaken by attendees), and the fact that certain concepts like "FIFO" are well known is irrelevant to the trade secrets SS&C actually claims.[5] At most, Arcesium's proposed motion would establish that some aspects of a small fraction of claimed trade secrets are public,

---

[2] Here, SS&C's 30(b)(6) witness testified that the Copyright Office filings do not fully reflect the asserted trade secrets, *e.g.*, Ex. K. This is a fact issue that will not be resolved on summary judgment.

[3] The cases Arcesium cites illustrate why early summary judgment is improper here. *G5 Techs., Inc. v. IBM Corp.*, 2005 WL 2271741, at *9 (S.D.N.Y. Sept. 19, 2005) (parties *consented* to early summary judgment); *Petito v. Puritan's Pride, Inc.*, 35 F. Supp. 3d 494, 502 (S.D.N.Y. 2014) (early summary judgment on "discrete" patent validity issue resolved entire case); *Negrete v. Citibank, N.A.*, 2016 WL 67788, at *2 (Jan. 5, 2016) (early summary judgment on contract claim could have resolved it), *denying summ. j.*, 187 F. Supp. 3d 454 (S.D.N.Y. 2016).

[4] Arcesium is incorrect that the combination secrets are inadequately identified. For example, with respect to Geneva's swaps functionality, the Supplement includes a set of specific swaps data attributes (Ex. A app. A), as well as functional definitions of those attributes and additional swaps functionality. *Id.* at 11, 14–15 & app. C.

[5] SS&C claims Geneva's set of tax closing methodologies—including unique and proprietary ones specifically identified in the Supplement—is trade secret. Ex. A at 19–20 & app. K. Similarly, as to "Modified Duration," "Accrued Interest," and "Dividends Payable," SS&C does not claim these accounting concepts are trade secret. SS&C does claim Geneva's chart of accounts, with hundreds of financial accounts (including their naming, grouping, and definitions) and dozens of assigned attributes and values, is trade secret. *Id.* at 25–26 & apps. L–N; *see Masimo Corp. v. Apple Inc.*, 2023 WL 2633961, at *9 (C.D. Cal. Feb. 10, 2023) (trade secret went "beyond merely reciting existing principles").

Hon. Ona T. Wang                                                                                      February 28, 2024

but would not resolve whether Arcesium's copying went beyond that nor SS&C's claims as to all of its other asserted trade secrets.

*Fourth*, there would be no efficiency gained through a partial summary judgment motion at this time. Arcesium's proposal is to stay discovery, litigate partial summary judgment, recommence discovery on remaining issues, then litigate summary judgment again. ECF No. 244 at 2 n.2. Not only would this process result in extended delay for no purpose, but it would risk losing evidence through faded memories and unavailable witnesses. It is also fundamentally inconsistent with Judge Reif's admonition that discovery should be concluded. Completing the limited remaining discovery, which can occur quickly with the parties' cooperation, would permit summary judgment briefing in its ordinary course on a *full* record. Ex. L (SS&C's discovery proposal).[6]

### III.  SEED, GEAR, And Munshi Are Properly In The Case

The Amended Complaint, filed by SS&C on May 20, 2022, put Arcesium on notice that its entire platform and associated components—including SEED, GEAR, and Munshi—were in the case. Indeed, those three components have been the subject of extensive discovery since inception.

Under settled notice pleading standards, a complaint need only provide a general description of the claim; evidentiary detail is not required. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 68 F.4th 792, 800 (2d Cir. 2023) (trade secret complaint sufficiently specific if it provides "notice of the bases for the claim being made"); WRIGHT, MILLER & KANE 6 FED. PRAC. & PROC. CIV. § 1471 (3d ed., Westlaw) (the "federal rules assign the [complaint] the limited role of providing . . . notice" of the claim asserted and "no longer carry the burden of fact revelation and issue formulation, which now is discharged by the discovery process").

Here, the Amended Complaint *does* describe the "components" SEED, GEAR, and Munshi: "Arcesium used Geneva . . . to design the components of its platform that *feed data to and extract data from Geneva*." Am. Compl. (ECF No. 35) ¶ 68 (emphasis added). SEED feeds data to and GEAR extracts data from Geneva, and Munshi facilitates those data exchanges. Ex. M at 8, 12; Ex. N. The Amended Complaint also alleges that Arcesium used Geneva, including its data model, to create "mirror image[s]" of Geneva data fields "within the Arcesium platform," Am. Compl. ¶ 69, which is precisely what Arcesium did with SEED and GEAR. In fact, SS&C *expressly told* Arcesium at the beginning of discovery, in July 2022, that paragraphs 68 and 69 of the Amended Complaint specifically referred to SEED and GEAR. Ex. O, Tab 5. And, in any event, there is no requirement that Arcesium's names for these software components be spelled out in the pleadings. *See Allyn v. Rockland Cnty.*, 2012 WL 5992735, at *2 (S.D.N.Y. Nov. 8, 2012) (complaint need only provide "notice of [claims'] general nature" so parties may use "discovery procedures" to understand claims' "factual basis"). Arcesium's contention that the case is limited to Trinity and Nautilus is only wishful thinking and ignores that the Amended Complaint *repeatedly* alleges misappropriation throughout "Arcesium's platform."[7]

---

[6] A full record includes additions to the Supplement, as SS&C is entitled to refine the at-issue trade secrets with new information about Arcesium's copying. *Ferguson v. Ferrante*, 2014 WL 1327968, at *2 (S.D.N.Y. Apr. 3, 2014).

[7] *E.g.*, Am. Compl. ¶ 49 (misappropriation was to enhance "*the Arcesium platform*, including *but not limited to . . .* Trinity" (emphasis added)); *id.* ¶¶ 50–52 (describing in detail Arcesium's misappropriation to address "shortcomings and concerns with *Arcesium's platform*" (emphasis added)); *id.* ¶ 97 (Arcesium used Geneva trade secrets "to build, develop, and test its own products, including the *Arcesium platform*" (emphasis added)).

Hon. Ona T. Wang                                                                February 28, 2024

The discovery record and this Court's discovery rulings confirm that SEED, GEAR, and Munshi are part of this case. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) (Sotomayor, J.) (discovery proceedings provided notice of claim); *Hernandez v. Goord*, 2014 WL 4058662, at *3–5 (S.D.N.Y. Aug. 14, 2014) (same). From the outset, SS&C requested extensive information about these components, and Arcesium agreed to, and (albeit reluctantly and fitfully) did produce it. Ex. O. For example, Arcesium agreed: to use "SEED" and "GEAR" as search terms, *id.* Tabs 6, 9; that the sandbox would include SEED, GEAR, and Munshi, *id.* Tab 10; to produce SEED and GEAR development materials, *id.* Tabs 13–14; and to produce SEED and GEAR data models, *id.* Tabs 11–15. Moreover, SEED, GEAR, and Munshi have been discussed at length in multiple depositions, Ex. P, and SEED, GEAR, and Munshi are central to the parties' *agreed* Arcesium 30(b)(6) deposition topics, Ex. O, Tab 17. And, on April 5, 2023 the Court ordered Arcesium to make available sandbox functionality described in Appendix A to SS&C's March 7, 2023 letter, including Arcesium's security master (*i.e.*, SEED) and reporting functionality (*i.e.*, GEAR and Munshi), and to produce additional SEED and GEAR data models.[8] Having been put on notice from the start that SEED, GEAR, and Munshi are part of the case, and having agreed (and been ordered) to produce information relating to them, Arcesium cannot excise these components now merely because they show its brazen theft.

Arcesium's reliance on SS&C's claims against DESCO to exclude SEED, GEAR, and Munshi is also baseless. It is undisputed that SEED, GEAR, and Munshi have been part of Arcesium's platform since Arcesium was formed in 2015. Exs. M, N. SS&C alleges that Arcesium is liable for *using* Geneva trade secrets in its platform, which includes SEED, GEAR, and Munshi. Am. Compl. ¶ 93; *see* 18 U.S.C. § 1839(5)(B) (defining "misappropriation" to include unauthorized *use* of trade secrets). The fact that DESCO may bear responsibility for misappropriation in the original *development* of SEED, GEAR, and Munshi prior to 2015 does not limit Arcesium's liability for *using* (and further developing) those infringing components after 2015. This is consistent with the DESCO complaint allegations that SS&C only learned in recent discovery of DESCO's role in originally developing SEED, GEAR, and Munshi. DESCO Am. Compl. ¶ 85.

Finally, if the Court believes Arcesium somehow lacked notice regarding SEED, GEAR, and Munshi, the proper relief (which is unnecessary here) would be to grant SS&C leave to amend its complaint to conform it to discovery. Such amendments are freely granted because "[p]leadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and mere technicalities should not prevent cases from being decided on the merits." *Meyer v. Seidel*, 89 F.4th 117, 139 (2d Cir. 2023) (reversing denial of leave to amend); *Picker Int'l, Inc. v. Leavitt*, 128 F.R.D. 3, 5 (D. Mass. 1989) (conforming amendment allowed in misappropriation case).[9]

---

[8] Ex. O, Tab 15 at 17–19. At the same conference, SS&C explained it had consistently focused on "the input to the accounting, which is known as SEED; the output from the accounting, which is known as GEAR; Trinity, which is their accounting engine; and Nautilus, which is how they connect their accounting engine to customers." *Id.* at 22.

[9] Any amendment here is governed by the liberal Rule 15(a)(2) pleading standard. The stricter Rule 16 "good cause" standard only applies when a prior scheduling order specifies that amendments after a date certain are "prohibited." *Sacerdote v. N.Y.U.*, 9 F.4th 95, 115 (2d Cir. 2021). The Amended Complaint was filed only two months after the case was initiated on a schedule the parties agreed to, and this Court never set a date after which further amendments would be "prohibited." Further, SS&C has good cause to amend given that SEED, GEAR, and Munshi have been central to discovery. *See, e.g., Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) ("as [defendant] does not contest that [plaintiff] learned of the alleged breaches . . . during the course of discovery, the Court is satisfied that . . . good cause exists to permit" amended complaint).

Hon. Ona T. Wang                                                                February 28, 2024

                                       Respectfully submitted,

                                       */s/ Stephen Fishbein*

                                       Stephen Fishbein

cc:       Counsel of record for Arcesium (via ECF)